IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-00216-01/02-CR-W-DW |
| ) | |
| JAMES E. ALDRIDGE, JR., and ) | |
| SHIRLEY L. ALDRIDGE, ) | |
| ) | |
| Defendants. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on Defendants, James Aldridge and Shirley Aldridge's, Motion to Dismiss Indictment. For the reasons set forth below, it is recommended that this motion be denied.

I. THE INDICTMENT

On June 27, 2006, the grand jury returned a five count indictment against defendants James E. Aldridge, Jr., and Shirley L. Aldridge. Under the heading "Background," the indictment sets forth information relating to Concept Marketing International ("CMI"), a company founded by James E. Aldridge, Jr. (Indictment at 1) CMI sponsored seminars where it encouraged the use of trusts to reduce taxes. (Id. at 2) In additional to the use of trusts, CMI advocated the use of a home based business in order to deduct from taxes personal living expenses. (Id. at 2-3) The indictment then states:

> 7. On January 23, 2004, JAMES E. ALDRIDGE, JR., and two entities controlled by him, CMI and Liberty Commerce Group Trust, were ordered by the State of Missouri to cease and desist the offering or selling notes or evidences of indebtedness in Concept Marketing International; Liberty Commerce group Trust; and Continental Fiduciary Management.

(Id. at 3) The indictment goes on to list the trust activity of defendants James and Shirley Aldridge. (Id. at 5-10) Under the heading "The Scheme or Artifice to Defraud," the indictment provides as follows:

> 42. It was part of the scheme and artifice to defraud the United States that

JAMES E. ALDRIDGE, JR., and SHIRLEY L. ALDRIDGE created the aforementioned trusts to evade federal taxation.

43. It was further part of the scheme that JAMES E. ALDRIDGE, JR., and SHIRLEY L. ALDRIDGE retained and exercised control over the aforementioned trusts and controlled the income and assets of these trusts.

44. It was further part of the scheme that JAMES E. ALDRIDGE, JR., and SHIRLEY L. ALDRIDGE used the income generated from the aforementioned trusts and the assets retained by the trusts for their own personal purposes.

45. It was further part of the scheme that federal tax returns were not filed by JAMES E. ALDRIDGE, JR., or SHIRLEY L. ALDRIDGE or any other person for the aforementioned trusts for the period 1999-2004 with the exception of the Alliance Financial Trust and the James Aldridge Gift Trust for the year 2000.

46. It was further part of the scheme that the income generated from the aforementioned trusts was not included in any federal tax return filed by any trust nor by JAMES E. ALDRIDGE, JR., nor SHIRLEY L. ALDRIDGE for the period 1999-2004.

47. It was further part of the scheme that CMI had unreported net income of $56,968.00 in 1999; $5,863.00 in 2000; $292,999.00 in 2001; $284,958.00 in 2002; $59,869.00 in 2003; and $123,104.74 in 2004.

48. It was further part of the scheme that LCGT [the Liberty Commerce Group Trust] had unreported net income of $137,240.45 in 1999; $119,003.00 in 2000; $177,976.62 in 2001; $182,794.88 in 2002; $120,142.22 in 2003; and $50,694.24 in 2004.

49. It was further part of the scheme that LorBert Trust had unreported net losses of $2,158.14 in 1999; $1,855.06 in 2000; $1,743.93 in 2001; $1,547.30 in 2002; $3,044.64 in 2003; and $2,465.22 in 2004.

50. It was further part of the scheme that Alliance Financial Trust reported net income of $249.08 in 2000; and had unreported net losses of $28,612.44 in 2001; $8,971.78 in 2002; $5,602.39 in 2003; and $8,511.64 in 2004.

51. It was further part of the scheme that CMI funneled 50% of its income to the LCGT and 50% to the Aldridge Family Trust. Thereafter, the Alliance Financial Trust funneled 100% of its income to the LCGT, which distributed 100% of its income to the Aldridge Family Trust. Additionally, the LorBert Trust transferred 100% of its income to the Aldridge Family Trust and the Excalibur Trust distributed its assets to the Aldridge Family Trust. Consequently, any remaining income from the Aldridge Family Trust was transferred to the Aldridge Foundation.

52. It was further part of the scheme that JAMES E. ALDRIDGE, JR., and SHIRLEY L. ALDRIDGE had a total unreported net income of $185,930.14 in 1999; $121,206.68 in 2000; $463,856.27 in 2001; $505,162.27 in 2002; $198,851.22 in 2003; and $179,211.73 in 2004.

53. It was further part of the scheme that JAMES E. ALDRIDGE, JR.,

and SHIRLEY L. ALDRIDGE reported taxable income of $30,039.00 in 1999; and $18,942.00 in 2000; and reported taxable losses of $12,255.00 in 2001; $13,793.00 in 2002; $14,211.00 in 2003; and $10,761.00 in 2004.

      54. It was further part of the scheme that JAMES E. ALDRIDGE, JR., and SHIRLEY L. ALDRIDGE generated a total of $1,702,036.00 of unreported taxable income for the period 1999-2004 which yielded a total of $661,376.00 federal income tax due and owing for that period.

(Id. at 10-12) Counts One through Five of the indictment charge defendants with filing false income tax returns for the years 2000 through 2004, respectively.

## II. THE STATUTE

The statute under which defendants are charged, 26 U.S.C. § 7206(1), provides:

**§ 7206. Fraud and false statements**

    Any person who—

    (1) **Declaration under penalties of perjury.**—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter ...

\* \* \*

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ... or imprisoned not more than 3 years, or both, together with the costs of prosecution.

## III. DISCUSSION

Defendants allege that the indictment should be dismissed due to erroneous legal instructions given to the indicting grand jury through testimony of I.R.S. agents and instructions of the U.S. Attorney.[1] (Defendants, James Aldridge and Shirley Aldridge's, Motion to Dismiss Indictment at 2) Defendants provided the following examples of legal points on which they claim members of the grand jury were misadvised and misinstructed:

    1.1. That the trusts operated by and/or connected with the Defendants were (are) illegal.

---

[1] The undersigned has denied defendants' request for disclosure of the instructions given to the grand jury by the U.S. Attorney.

3

>       1.2. That trusts may not pay the lodging expenses of their managers, contractors, or other agents.
>
>       1.3. That trusts may not pay the costs of meals, health care, and other expenses of their managers, contractors, or other agents.
>
>       1.4. That contracts between trusts and contractors or agents for provision of personal services to third parties are illegal under the "anti-assignment" provisions of the Internal Revenue Code.
>
>       1.5. That trusts to which a taxpayer transfers any assets are illegal under the "Grantor Trust" provisions of the Internal Revenue Code.
>
>       All of the above statements are false and misleading and did not accurately instruct and inform the indicting Grand Jury on the principles of law applicable to the indictment.

(Defendants, James Aldridge and Shirley Aldridge's, Motion to Disclose Additional Grand Jury Minutes Pursuant to Rule 6(e)(3) F.R.Cr.P. at 1-2)[2] The Court notes that no citations to the record were provided for these examples. Defendants further argue in their motion:

> If the Grand Jury relied on the above statements as absolute accurate statements of the law, then the indictment they returned is a product of misleading and/or erroneous instructions.
>
> * * *
>
> ... Examples of misstatements concerning the applicable law by the Government include the testimony of I.R.S. Agent Jeff Trogden, Testimony of Trogden, P. 8, LL 11-25; P. 9, LL 1-12 that the trust(s) utilized by the Defendant "... are illegal ...."[3]

(Defendants, James Aldridge and Shirley Aldridge's, Motion to Disclose Additional Grand Jury Minutes Pursuant to Rule 6(e)(3) F.R.Cr.P. at 2-3)

In their suggestions in support of the motion to dismiss, defendants also allege that "the Grand Jury was misled into believing ... that cease and desist order(s) issued by the State of Missouri against the Defendants proved the existence of a scheme by Defendants to sell fraudulent securities

---

[2] Defendants incorporated by reference these examples into their motion to dismiss. (Defendants, James Aldridge and Shirley Aldridge's, Motion to Dismiss Indictment at 1)

[3] This is the <u>only</u> citation to the transcript provided in defendants' briefing. However, the alleged quote is not contained within the pages and lines cited. Further, the Court has reviewed Special Agent Trogden's entire transcript and the word "illegal" is not contained within the transcript.

4

as part of the tax charges being considered by the Grand Jury." (Defendants, James Aldridge and Shirley Aldridge's, Suggestions in Support of Motion to Suppress and Motion to Dismiss Indictment at 2) According to defendants, "The securities cease and desist orders had nothing whatsoever to do with the Defendants' tax liabilities or the accuracy of their returns. The mention of the cease and desist orders could only have been calculated to prejudice the Grand Jury." (Id. at 2-3)

In a later brief, defendants continue to argue (without citation to the record) that the agent advised the grand jury that trusts are illegal:

> The harm which occurred here was easily predictable. When a Grand Jury Member questioned the Prosecution and its IRS witness about the Defendant's tax position, the Grand Jury was told by the testifying agent that the Trusts in question relied on by the Defendants as separate taxable entities were "... illegal ...." In the absence of some form of curative instructions, the Grand Jurors would feel obligated to indict irrespective of how the Trusts were formed and operated.
>
> * * *
>
> Without correction the testimony that trusts are illegal for a taxpayer to use flagrantly misled the Grand Jury and the indictment must be dismissed under Eighth Circuit standards. ...

(Defendants, James Aldridge and Shirley Aldridge's, Submission in Support of Motion to Disclose Grand Jury Minutes (and Instructions) at 3-4)

At a hearing held on March 12, 2007, defense counsel offered the entire transcript of Special Agent Trogden's testimony before the grand jury as an exhibit. Defense counsel then listed the following citations to Special Agent Trogden's testimony as "problem areas:"

> Q. And you answered my next question: Are these personal living expenses at all allowable deductions, whether you're in a trust or not?
>
> A. No.[4]

---

[4] Defense counsel takes issue with this answer because he states "the necessity and convenience of the employer test" would allow a business entity to pay a personal expense of an individual and deduct the expense from the business with no tax liability to the individual. (Tr. of 3/12/07 Hearing at 13) Defense counsel provided an example of a business paying the living expenses of an employee who must live on an iceberg because without these paid expenses nobody would take the job. (Id.) According to defense counsel, these living expenses are not considered income to the employee because they were paid more as a necessity and convenience to the employer than as a benefit to the employee. (Id.) Nevertheless, defense counsel has not

5

(Testimony of Jeff Trogden at p.7, ll. 6-9)

> Q. And based on your analysis and financial analysis of their checking accounts and business transactions, can you tell the grand jury whether or not these are, in fact, legitimate trusts?
>
> A. No. They do not appear to be a legitimate trust.
>
> Q. In order for there to be a legitimate trust, wouldn't there have to be a separation of the owner of the assets or the grantor and the person who manages the trust or the trustees?
>
> A. Yes.

(Testimony of Jeff Trogden at p. 8, ll. 15-24)

> Q. So by the terms of what you've just told us, to have a legitimate trust, the grantor and the trustee cannot be the same person?
>
> A. That is correct.

(Testimony of Jeff Trogden at p. 10, l. 23 - p. 11, l. 1)

> Q. If they were legitimate trusts, would the grantor trust be the closest to anything that's defined in federal criminal law?
>
> A. That would be correct.

(Testimony of Jeff Trogden at p. 12, ll. 3-6)

> Q. And finally, what is a complex trust?
>
> A. It's a trust that is not a grantor trust or a simple trust, and any undistributed income is taxed to the trust itself.

(Testimony of Jeff Trogden at p. 12, ll. 22-25)

> GRAND JURY FOREMAN: I got - - we've heard a very one-sided presentation. I'm curious what in a case like this is the argument of the defense? Is there any?
>
> THE WITNESS: They were claiming that this trust system that they don't own the assets; they don't control the income. It's all the trust income.
>
> Whereas our evidence shows that they do control it and they use it - - use it for their own personal expenses. They say where the income goes, what happens to it, and how it's spent.
>
> MR. MEINERS: Yes, sir.

---

argued that this test has any application to defendants or their trusts.

GRAND JUROR: There are - - I've jotted down there are three types of trusts, which one or both of you confirmed. Grantor trusts and beneficiary type trusts. Would it be safe to say that no matter which type of trust is used that they are taxable?

THE WITNESS: You're talking about the income?

GRAND JUROR: Yes.

THE WITNESS: Yes. The income is taxable no matter why - -

GRAND JUROR: Without fail?

THE WITNESS: I'm sorry?

GRAND JUROR: Without fail?

THE WITNESS: Yes.

GRAND JUROR: They are taxable.

GRAND JUROR: What about charitable trusts?

THE WITNESS: In a charitable trust, if it's actually set up in a charitable trust, no, it wouldn't be taxable.

Q. (By Mr. Meiners) Let me just clear up the record a second. We talked about three different types of trusts?

A. Right.

Q. For purposes of this indictment, what are the three different types of trusts that the grand jury is dealing with?

A. A grantor trust, a simple trust, and the complex trust. The grantor trust being the grantor puts the assets into the trust, retains control of them. And for Internal Revenue Service tax law purposes, does not file a tax return. All the income is reported on a grantor's tax return.

    A simple trust - - look at my thing here for a second. So I don't mess it up.

    A simple trust is required - - earns the income, is required to distribute all the income to the beneficiaries each year. So it will file a return, but it will show it made $100,000, $100,000 went to however many beneficiaries there are. The beneficiaries are required to claim that money on their individual tax returns. From 1040 if it's an individual. It can also distribute to another trust, not to get too complicated here, and the other trust, depending on what type of trust it is, would report it as it was supposed to.

    Then you have the complex trust which can or cannot - - it depends on what you want to do. Can distribute the money to the beneficiaries or can

7

> hold on to the money. And if it files a form, just very similar to a 1040, it takes off what deductions it's allowed at the bottom, comes up with the taxable income, and pays taxes on whatever the taxable income is.
>
> GRAND JUROR: In any event tax is due?
>
> THE WITNESS: In any event tax is due.
>
> GRAND JUROR: By a grantor? A trustee? Any one of those three?
>
> THE WITNESS: Right. Absolutely. That's correct.

(Testimony of Jeff Trogden at p. 36, l. 25 - p. 39, l. 24)

The Court has reviewed the entire transcript of Special Agent Trogden's testimony before the grand jury. Contrary to defendants' argument, Special Agent Trogden did not state that trusts are illegal for taxpayers to use. Instead, Special Agent Trogden stated that the deduction of personal living expenses from taxes is not allowable whether you use a trust or not (Tr. of Special Agent Trogden's Testimony at 7); that, based on his investigation, Special Agent Trogden believed the Aldridges formed trusts in order to create an illusion that they were giving up control of their assets and to shield the money from income tax (id. at 8); that the trusts formed by the Aldridges did not appear to be legitimate trusts because the Aldridges maintained control of the assets and were the beneficiaries as well (id. at 8-9); that the Aldridges did not claim the income generated from their businesses in their personal income tax returns (id. at 12); that because the Aldridges received no salaries and only minimal trustees fees to manage trusts that were ongoing businesses, the trusts appeared to be a sham to shield income from taxation (id. at 15-16, 18, 21-23, 27, 29); that the trusts formed by the Aldridges, for the most part, did not file tax returns (id. at 15, 18, 20-25, 29-30); that money was funneled through different Aldridge trusts for the apparent purpose of making it so complicated that federal investigators would be unable to figure out what was going on (id. at 28); that the apparent purpose of the Aldridge trusts was to evade federal taxation (id. at 29); that the income generated from the trusts was not included in any federal tax return filed by any trust, nor by the Aldridges, for the period 1999 through 2004 (id. at 30); and that aside from a charitable trust, income is taxable no matter what type of trust is used (id. at 37).

Defendants have failed to provide any case law to support their contention that Special Agent Trogden misstated the law or that he misled the jury. As set forth by the government in its response, "it is the position of the government that these trusts did not legitimately absolve defendants of tax liability and therefore Special Agent Trogden's testimony is correct." (Government's Response in Opposition to Defendants' Motion to Disclose Additional Grand Jury Minutes at 2) With respect to information relating to the cease and desist orders which was presented to the grand jury by Special Agent Trogden, the government argues that the cease and desist orders were directly related to CMI, which was the main source of defendants' income, and that the government intends to offer evidence relating to the cease and desist orders at trial to establish defendants' intent to defraud. (Government's Response in Opposition to Defendants' Motion to Dismiss at 1)

Defendants have a heavy burden in seeking a dismissal of the indictment on the basis of prosecutorial misconduct before the grand jury. See United States v. Kouba, 822 F.2d 768, 774 (8th Cir. 1987)("Grand jury proceedings are afforded a strong presumption of regularity, and a defendant seeking to overcome that presumption faces a heavy burden.") A dismissal for prosecutorial misconduct before the grand jury is warranted only upon a showing of actual prejudice to the accused. See United States v. McKie, 831 F.2d 819, 821 (8th Cir. 1987); Kouba, 822 F.2d at 774; United States v. Carr, 764 F.2d 496, 498 (8th Cir. 1985), cert. denied, 475 U.S. 1010 (1986).

Further, "[i]t is well settled that an indictment returned by a legally established and unbiased grand jury 'is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.'" United States v. Roach, 28 F.3d 729, 739 (8th Cir. 1994)(quoting United States v. Calandra, 414 U.S. 338, 345 (1974)). Absent some evidence of gross purposeful deception by the government, an indictment will not be overturned because it is possible that some of the evidence presented to the grand jury may have permitted an erroneous adverse inference. See United States v. Levine, 700 F.2d 1176, 1179 (8th Cir. 1983). "[M]isstatements or mistakes alone [do not] justify the dismissal of an indictment which is valid on its face." Id. at 1180. Accord United States v. Moore, 184 F.3d 790, 794 (8th Cir. 1999), cert. denied, 528 U.S. 1161

9

(2000). Finally, an indictment should not be dismissed if there is some competent evidence to sustain the charge issued. See United States v. Johnson, 767 F.2d 1259, 1275 (8th Cir. 1985)(even if agent perjured himself before grand jury, dismissal is not proper where defendants had not shown that grand jury heard no evidence competent to sustain indictment). Accord Moore, 184 F.3d at 794; Levine, 700 F.2d at 1180.

Nothing has been presented to support a conclusion that Mr. Meiners or Special Agent Trogden misadvised or misinformed the grand jury, let alone that they attempted to purposely deceive the grand jury. Defendants' motion to dismiss must be denied.

IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendants, James Aldridge and Shirley Aldridge's, Motion to Dismiss Indictment (doc #29).

Counsel are reminded they have ten days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                               */s/ Sarah W. Hays*
                                               SARAH W. HAYS
                               UNITED STATES MAGISTRATE JUDGE